CITIZENS BANK OF ENID V. ED GILROY AND S. R. MAR-

SHALL, *Trustees.*

ATTACHMENT—*Dissolution of—Affirmed.* Where it is sought to sustain an attachment on the ground that the debtor had made, or was making, a transfer of his property with intent to cheat, hinder, delay or defraud his creditors, and an issue is made by a traverse of the attachment affidavit, and proof by affidavit and oral testimony is offered, and the trial court dissolves the attachment this court will not reverse the determination of the trial court if there is evidence to support the decision rendered.

*Error from the District Court of Garfield County.*

Action on promissory note, with attachment proceedings. From an order dissolving the attachment, plaintiff appeals. Affirmed.

*Beauchamp & Rush* and *W. S. Denton*, for plaintiff in error.

*C. H. Parker* and *John Curran*, for defendants in error.

The opinion of the court was delivered by

BIERER, J.: On the 25th day of February, 1897, the plaintiff brought its action to recover the sum of $255 against the defendant, Ed Gilroy, and Irene Gilroy, his wife, and procured an attachment to be issued, and levied on certain real estate of the defendants, Ed Gilroy and Irene Gilroy. The attachment was levied on this property on the night of February 25th, at 11 o'clock P. M.

The attachment affidavit contains the usual charge that the defendants are about to sell, assign, transfer and dispose of their property with intent to cheat, defraud, hinder and delay their creditors; that they are about to remove their property out of the jurisdiction of the court, and are about to convert their property, or a part thereof, into money for the purpose of placing it beyond the reach of their creditors. The defendants filed their motion to dissolve this attachment. S. R. Marshall, as trustee for himself and others who had purchased this real estate, also moved a dissolution of this attachment. The defendants denied all the grounds for attachment contained in the attachment affidavit, and Marshall, as trustee, claimed that he, and the parties for whom he was trustee, purchased the land before, and were the owners thereof, at the time the attachment was levied on the land.

Both motions were heard together by the trial court, evidence was presented orally and by affidavit, and

judgment rendered dissolving the attachment, and we are asked to reverse this determination of the trial court.

There is very little indeed, even as a basis for a claim, that there was fraud in this case sufficient to sustain the attachment, and what there is is based on the specific intention of the defendant, Ed Gilroy, to defraud his creditors. It appears that S. R. Marshall and about fifteen other persons had been negotiating for two or three weeks with the defendant, Ed Gilroy, for the purchase of the land attached, and had substantially come to an agreement. That Mrs. Gilroy was absent in Ohio, and she executed a deed to S. R. Marshall, as trustee, on the 23d day of February, 1897, and the defendant, Ed Gilroy, joined in the deed on the 25th day of February, 1897. That Ed Gilroy was in Enid, and notified the purchasers that he was ready to deliver the deed; and a metting was called for the afternoon of February 25th, at which H. H. Watkins, cashier of the plaintiff, was present, and it was then finally agreed to accept the land from Gilroy at $1,670, and the deed made to Marshall as trustee was approved, and Marshall was directed to pay for the land, and complete the purchase. The land was being purchased by this association of persons as a site for a mill, and Watkins was one of the projectors of the scheme. Afterwards, in the same afternoon, Marshall proceeded to get the parties to the scheme to sign a subscription paper, and make their payments. Watkins declined to do this, unless he could turn in a note which his bank held, on his subscription, and this was declined by Marshall, who, finding some difficulty in procuring payment of the subscription concluded to let the matter rest until the next day. However, in the evening Marshall and Gilroy, anticipating that one Harry Thompson would, at the instigation of what is termed "North Town

Men," bring some proceding to tie up and prevent the transfer, completed the purchase by Marshall's accepting the deed from Gilroy and giving his, Marshall's, check on a bank in Denver for $783, which was the balance of the purchase price after deducting a mortgage and the taxes on the land, which were assumed by the purchasers. This was done about 9 o'clock in the evening.

The issue made was one of fact for the determination of the trial court, and this was determined against the plaintiff, and of course, unless unsupported by proof, it must be sustained.

The only authorities cited by plaintiff in error are upon the proposition that if Marshall had notice of such facts as would put a prudent man upon inquiry, which, if diligently pursued, would have given him knowledge of the fraud which it is claimed Gilroy was perpetrating upon his creditors, he had notice of the fraud. The authorities cited, and the proposition of counsel for plaintiff in error, correctly state the law on this question. There is no question but what Marshall had notice of the fraud, if there was any, but in order to sustain an attachment on that ground the fraud must be proven, and that is what we think plaintiff in error has failed to do in this case. There was no secrecy about the transaction in the sale of this real estate. It had been pending, as the evidence clearly shows, for two or three weeks, and was openly and publicly talked about, and Watkins, cashier of the plaintiff, knew all about it. Gilroy produced and and exhibited a deed at the meeting during the afternoon when the negotiation was finally completed, and Watkins was interviewed about it several times between that time and its final consummation. It is clearly shown that the completion of the transfer that night was

not to defraud any creditors of Gilroy, but to prevent other parties who, it appears, had been negotiating for the purchase, or making an effort to purchase this tract of land, from blocking the sale. It does not even appear that Thompson, whom it was feared would bring some kind of a suit, was a creditor of Gilroy's, unless we infer that he was the party who held the mortgage. It is not shown that Gilroy owed any other debts than the plaintiff's note and the mortgage on this real estate. It is clearly proven that the parties for whom Marshall was trustee assumed this mortgage, and were ready and willing to pay it at any time. Counsel does not even contend that there is anything in the proof which tends to show that the Gilroys were making this sale and transfer to defeat the plaintiff.

There is ample evidence to support the good faith of this sale, both on the part of the Gilroys and the purchasers; but even if there was a conflict in the evidence concerning the purpose of the Gilroys in making the sale, that would not be sufficient reason for a reversal of the judgment of the trial court. (*Dunham v. Holloway*, 3 Okla. 244, 41 Pac. Rep. 140; *Tootle v. Brown*, 4 Okla. 612, 46 Pac. Pep. 550).

We see no reason for disturbing the conclusion of the trial court, and the judgment is therefore affirmed.

McAtee, J., who presided in the court below not sitting; all the other Justices concurring.